# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# STATESVILLE DIVISION
# CIVIL NO. 5:16CV005-DSC

JEANNE EFFLER HARRIS,  )
    Plaintiff,  )
           )
    vs.  )    **MEMORANDUM AND ORDER**
           )
CAROLYN W. COLVIN,  )
Commissioner of Social  )
Security Administration,  )
    Defendant.  )
           )

**THIS MATTER** is before the Court on Plaintiff's "Motion for Judgment on the Pleadings" (document #12) and Defendant's "Motion for Summary Judgment" (document #14), as well as the parties' briefs and exhibits.

The parties have consented to Magistrate Judge jurisdiction pursuant to 28 U.S.C. § 636(c) and these Motions are now ripe for disposition.[1]

Having considered the written arguments, administrative record, and applicable authority, the Court finds that Defendant's decision to deny Plaintiff Social Security disability benefits is supported by substantial evidence. Accordingly, the Court will deny Plaintiff's Motion for Judgment on the Pleadings; grant Defendant's Motion for Summary Judgment; and affirm the Commissioner's decision.

## I. PROCEDURAL HISTORY

On November 8, 2011, Plaintiff filed applications for Disability Insurance Benefits

---

[1] Pursuant to the Text-Only Social Security Scheduling Order entered on February 23, 2016, Plaintiff was entitled to file a response brief on or before August 8, 2016. Plaintiff did not file a response.

("DIB") and Supplemental Security Income ("SSI"), alleging that she was unable to work since October 3, 2011 because of heart disease, hernias, and migraine headaches (Tr. 177-79, 214). Plaintiff's claim was denied initially and upon reconsideration.

Plaintiff filed a timely request for hearing. On September 19, 2014, the Administrative Law Judge ("ALJ") denied Plaintiff's claim. (Tr. 42 - 55). The ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged onset date. (Tr. 44). The ALJ found that Plaintiff suffered from heart disease, hernias, and headaches, which were severe impairments within the meaning of the regulations. Id. The ALJ further found that Plaintiff's generalized anxiety disorder was not a severe impairment. (Tr. 45 - 48). At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled any of the Listings (Tr. 48 - 49). See 20 C.F.R. Pt. 404, Subpt. P, Appendix 1.

The ALJ next found that Plaintiff retained the Residual Functional Capacity ("RFC")[2] to perform the full range of light work.[3] (Tr. 49). The ALJ found that considering Plaintiff's RFC along with her age, education and past work experience, she could perform her past relevant work as a sales person/radio personality which involved light skilled work. (Tr. 54). Accordingly, the ALJ concluded that Plaintiff was not disabled under the Act. Id.

On December 28, 2015, the Appeals Council denied Plaintiff's Request for Review. (Tr.

---

[2]The Social Security Regulations define "Residual Functional Capacity" as "what [a claimant] can still do despite his limitations." 20 C.F.R. § 404.1545(a). The Commissioner is required to "first assess the nature and extent of [the claimant's] physical limitations and then determine [the claimant's] residual functional capacity for work activity on a regular and continuing basis." 20 C.F.R. § 404.1545(b).

[3]"Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing or pulling of arm or leg controls." 20 C.F.R. §§ 404.1567(b), 416.967(b).

1-6).

Plaintiff filed the present action on January 7, 2016. She assigns error to the weight given by the ALJ to the opinions of treating physician Dr. Marc Guerra and Dr. Rasheda Ahsanuddin, a consultative psychiatrist, as well as to the ALJ's evaluations of her credibility and RFC. Plaintiff's "Memorandum … in Support … " at 3, 7-14 (document #13).

The parties' cross-Motions are ripe for disposition.

## II. STANDARD OF REVIEW

The Social Security Act, 42 U.S.C. § 405(g) and § 1383(c)(3), limits this Court's review of a final decision of the Commissioner to: (1) whether substantial evidence supports the Commissioner's decision, Richardson v. Perales, 402 U.S. 389, 390, 401 (1971); and (2) whether the Commissioner applied the correct legal standards. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); see also Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (per curiam). The District Court does not review a final decision of the Commissioner de novo. Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986); King v. Califano, 599 F.2d 597, 599 (4th Cir. 1979); Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972).

As the Social Security Act provides, "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). In Smith v. Heckler, 782 F.2d 1176, 1179 (4th Cir. 1986), quoting Richardson v. Perales, 402 U.S. 389, 401 (1971), the Fourth Circuit defined "substantial evidence" thus:

> Substantial evidence has been defined as being "more than a scintilla and do[ing] more than creat[ing] a suspicion of the existence of a fact to be established. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

3

See also Seacrist v. Weinberger, 538 F.2d 1054, 1056-57 (4th Cir. 1976) ("We note that it is the responsibility of the [Commissioner] and not the courts to reconcile inconsistencies in the medical evidence").

The Fourth Circuit has long emphasized that it is not for a reviewing court to weigh the evidence again, nor to substitute its judgment for that of the Commissioner, assuming the Commissioner's final decision is supported by substantial evidence. Hays v. Sullivan, 907 F.2d at 1456 (4th Cir. 1990); see also Smith v. Schweiker, 795 F.2d at 345; and Blalock v. Richardson, 483 F.2d at 775. Indeed, this is true even if the reviewing court disagrees with the outcome – so long as there is "substantial evidence" in the record to support the final decision below. Lester v. Schweiker, 683 F.2d 838, 841 (4th Cir. 1982).

## III. DISCUSSION OF CLAIM

The question before the ALJ was whether Plaintiff became "disabled" at any time as that term is defined for Social Security purposes.[4] The ALJ is solely responsible for assessing a claimant's RFC. 20 C.F.R. §§ 404.1546(c) & 416.946(c). In making that assessment, the ALJ must consider the functional limitations resulting from the claimant's medically determinable impairments. SSR96-8p at *2. However, it is the claimant's burden to establish her RFC by demonstrating how those impairments impact her functioning. See 20 C.F.R. §§404.1512(c) &

---

[4]Under the Social Security Act, 42 U.S.C. § 301, et seq., the term "disability" is defined as an:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . .

Pass v. Chater, 65 F. 3d 1200, 1203 (4th Cir. 1995).

4

416.912(c); see also, e.g., Stormo v. Barnhart, 377 F.3d 801, 806 (8th Cir. 2004) ("[t]he burden of persuasion . . . to demonstrate RFC remains on the claimant, even when the burden of production shifts to the Commissioner at step five"); Plummer v. Astrue, No. 5:11-cv-00006, 2011 WL 7938431, at *5 (W.D.N.C. Sept. 26, 2011) (Memorandum and Recommendation) ("[t]he claimant bears the burden of providing evidence establishing the degree to which her impairments limit her RFC") (citing Stormo), adopted, 2012 WL 1858844 (May 22, 2102), aff'd, 487 F. App'x 795 (4th Cir. Nov. 6, 2012).

The Fourth Circuit recently held that "remand may be appropriate . . . where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." Mascio v. Colvin, 780 F.3d 632, 636 (4th Cir. 2015) (quoting Cichocki v. Astrue, 729 F.3d 172, 177 (2d Cir. 2013). This explicit function-by-function analysis is not necessary when functions are irrelevant or uncontested. It is only after that function-by-function analysis has been completed that RFC may "be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy." Id. The ALJ's RFC determination here is supported by substantial evidence including Plaintiff's testimony, medical records and treatment history.

The ALJ considered the opinion of State agency medical consultant Dr. Hari Kuncha that Plaintiff could occasionally lift and/or carry twenty pounds and frequently lift and/or carry ten pounds. (Tr. 98). Dr. Kuncha further opined that Plaintiff could sit, stand and/or walk for six hours in an eight-hour work day. (Tr. 98). Plaintiff's ability to push and/or pull was unlimited, except as limited for lifting and carrying. (Tr. 98). Dr. Kuncha found no postural, manipulative, visual, communicative, or environmental limitations. (Tr. 98). Dr. Kuncha identified the evidence he considered in reaching his

conclusions. (Tr. 98).

State agency medical consultant Dr. Pamela Jessup opined that Plaintiff could perform what amounts to a full range of light work. She also identified evidence that had been added to the record since Dr. Kuncha rendered his opinion. (Tr. 115 - 116). Both doctors who are experts in the Social Security disability requirements opined that Plaintiff could perform a full range of light work. Their opinions provide substantial evidence in the record to support the ALJ's findings. See Thomas v. Celebrezze, 331 F.2d 541, 543 (4th Cir, 1964) (courts must scrutinize "the record as a whole" to determine whether the conclusions reached are rational).

The ALJ considered the record in detail, including the results of diagnostic tests such as EKGs, echocardiograms, CTs of the head and chest, carotid Doppler ultrasounds, treadmill, cardiac catheterization, brain MRI, chest x-ray, and cervical spine x-ray. (Tr. 50 - 52). He also considered that many of her physical examinations were largely unremarkable. (Tr. 50, 51, 52). The ALJ considered Plaintiff's surgical history, including an April 2010 operation for a thoracic aneurysm and hernia repair, noting that Plaintiff had done well except for intermittent chest pain. (Tr. 51, 692).

Plaintiff challenges the ALJ's evaluation of opinions from Doctors Guerra and Ahsanuddin. The Fourth Circuit has held that a treating physician's opinion need not be afforded controlling weight. Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992). A treating physician's opinion on the nature and severity of an alleged impairment is entitled to controlling weight only if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record. See 20 C.F.R. §§ 404.1527(d)(2) (2002); and Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001). Therefore, "[b]y negative implication, if a physician's opinion is not supported by clinical evidence or if it is inconsistent

6

with other substantial evidence, it should be accorded significantly less weight." Mastro, 270 F.3d at 178 (citing Craig v. Chater, 76 F.3d 585, 590 (4th Cir. 1996).

On March 15, 2013, approximately one month after her first appointment, Dr. Guerra opined that Plaintiff would be unable to work because of her thoracic aortic aneurysm, malaise, fatigue, and difficulties with stress. (Tr. 922). About a year later, Dr. Guerra signed a medical source statement opining that Plaintiff had a marked restriction in activities of daily living and maintaining social functioning, as well as deficiencies in concentration, persistence, and pace. (Tr. 1201). He added that her daily migraine headaches further prevented her from working. (Tr. 1204 - 1205).

The ALJ thoroughly explained why he gave little weight to Dr. Guerra's opinions. (Tr. 53 - 54). The ALJ considered the relevant factors set forth in 20 C.F.R. §§ 404.1527(c) and 416.927(c). The ALJ considered the length of the treating relationship by noting that Plaintiff began seeing Dr. Guerra in February 2013. (Tr. 52, 20 C.F.R. §§ 404.1527(c)(2)(i) and 416.927(c)(2)(i)). Significantly, Dr. Guerra did not provide support for his medical source statement, as evidenced by the blank spaces in the comment section of the form. (Tr. 1203, 1205). The ALJ also noted that Dr. Guerra was not a specialist. (Tr. 52, 20 C.F.R. § 404.1527(c)(5) and 416.927(c)(5)).

The ALJ found that Dr. Guerra's opinion was not consistent with the overall evidence. (Tr. 53, 20 C.F.R. §§ 404.1527(c)(4) and 416.927(c)(4)). The ALJ also noted that Plaintiff's physical examinations with Dr. Guerra were unremarkable. (Tr. 52 - 53). Dr. Guerra's records showed examinations of Plaintiff's extremities were normal and neurological examination was intact. (Tr. 52, 986 - 1050). When Plaintiff complained of randomly occurring headaches, Dr.

Guerra prescribed Topamax which helped. (Tr. 52, 1044). The ALJ noted that Plaintiff was hospitalized in July and August 2013 with salmonella gastroenteritis. (Tr. 935 - 39, 986 - 1008).

The ALJ considered Dr. Guerra's note that by September, 2013, Plaintiff was improved, walking, feeling better, and had more energy. (Tr. 53, 988). On October 16, 2013, Dr. Guerra indicated that Plaintiff was doing well, physical examination was unchanged, and her echocardiogram looked good. (Tr. 53, 1077). Substantial evidence supports the ALJ decision to give little weight to Dr. Guerra's opinions.

On October 12, 2012, Dr. Ahsanuddin conducted a consultative psychiatric examination. (Tr. 890 - 94). After taking Plaintiff's subjective history, Dr. Ahsanuddin conducted a mental status examination which revealed logical and goal directed thought processes with fair reality contact and impulse control. (Tr. 892). Plaintiff performed well on memory, fund of knowledge, calculation, abstract thinking, and judgment tests. (Tr. 892 - 93). Dr. Ahsanuddin opined that Plaintiff's abilities were in the low average range of intellectual functioning and that she could manage benefits independently if awarded them. (Tr. 893). Dr. Ahsanuddin concluded that Plaintiff could understand, retain, and follow simple instructions, show sustained attention to perform simple and repetitive tasks, and relate to others including co-workers and supervisors. (Tr. 894). Dr. Ahsanuddin opined that Plaintiff "may have some difficulty tolerating stress and pressures associated with day-to-day full time work because of recurrent mood swings, severe depressive episodes, chronic anxiety, multiple physical problems, extensive coronary artery disease with history of open heart surgery and multiple blockages in her arteries." (Tr. 894).

The ALJ fully considered all of the subjective reports Plaintiff presented to Dr. Ahsanuddin as well as her conclusions, and his decision that the opinion was entitled to little weight is

supported by substantial evidence. (Tr. 47 - 48). The ALJ explained that Dr. Ahsanuddin's opinion was based solely on Plaintiff's subjective statements and was not supported by objective medical evidence. (Tr. 48). The ALJ also observed differences in the information Plaintiff gave to Dr. Ahsanuddin as opposed to what she told Dr. Gordon Cappelletty, a consultative psychologist. (Tr. 48). Dr. Cappelletty found that at most Plaintiff suffered mild to moderate restrictions and should be able to tolerate pressures of day to day work. (Tr. 46).

Plaintiff assigns error to the ALJ's credibility determination. A review of the ALJ's decision reveals that his credibility determination is supported by substantial evidence.

The determination of whether a person is disabled by non-exertional pain or other symptoms is a two-step process. "First, there must be objective medical evidence showing the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged." Craig, 76 F.3d at 594 (citing 20 C.F.R. § 416.929(b); and § 404.1529(b); 42 U.S.C. § 423(d)(5)(A). If there is such evidence, then the ALJ must evaluate "the intensity and persistence of the claimant's pain, and the extent to which it affects [her] ability to work." Id. at 595, citing 20 C.F.R. § 416.929(c)(1); and § 404.1529(c)(1). The Regulations provide that this evaluation must take into account:

> not only the claimant's statements about his or her pain, but also "all the available evidence," including the claimant's medical history, medical signs, and laboratory findings; any objective medical evidence of pain (such as evidence of reduced joint motion, muscle spasms, deteriorating tissues, redness, etc.); and any other evidence relevant to the severity of the impairment, such as evidence of the claimant's daily activities, specific descriptions of the pain, and any medical treatment taken to alleviate it.

Craig, 76 F.3d at 595 (citations omitted).

The record contains evidence of Plaintiff's heart disease, hernias, and headaches – which <u>could</u> be expected to produce some of her symptoms. Accordingly, the ALJ found that Plaintiff met the first prong of the test. The ALJ then determined that Plaintiff's subjective complaints were not consistent with the objective evidence in the record. 20 C.F.R. § 404.1529(a) ("In determining whether you are disabled, we consider all your symptoms, including pain, and the extent to which your symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence.") The ALJ is responsible for making credibility determinations and resolving conflicts in the evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). The ALJ is accorded deference with respect to determinations of a claimant's credibility. Shively v. Heckler, 739 F.2d 987, 989 (4th Cir.1984). Indeed, "[b]ecause he had the opportunity to observe the demeanor and to determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight." Id.

In evaluating Plaintiff's subjective complaints, the ALJ considered that she provides full time care for her grandchildren who were ages two and seven during December 2012. (Tr. 46, 227). "The only fair manner to weigh a subjective complaint of pain is to examine how the pain affects the routine of life." Mickles v. Shalala, 29 F.3d 918, 921 (4th Cir. 1994).

Plaintiff told Dr. Cappelletty that she quit her job as a disc jockey at a local radio station because of conflicts with her supervisor. (Tr. 46, 725). At the hearing, Plaintiff testified that she was "fired" from her job because she was not meeting her sales quota. (Tr. 49, 71-72). Plaintiff estimated that she could not lift over twenty pounds—but the limitation to twenty pounds is consistent with the ALJ's limitation to light work. (Tr. 724, 20 C.F.R. §§ 404.1567(b) and 416.967(b)). The ALJ considered that testimony as well as the medical record discussed above and concluded that Plaintiff's claim of disabling pain was not

fully credible.

In short, although the medical records establish that Plaintiff experienced pain and mental and emotional difficulties to some extent, as the Fourth Circuit has noted, it is the ALJ's responsibility, not the Court's, "to reconcile inconsistencies in the medical evidence." Seacrist, 538 F.2d at 1056-57.

Simply put, "[w]here conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the Secretary (or the Secretary's designate, the ALJ)." Mickles, 29 F.3d at 923 (citing Simmons v. Bowen, 834 F.2d 635, 640 (7th Cir. 1987)). This is precisely such a case, as it contains substantial evidence to support the ALJ's treatment of the medical records, Plaintiff's credibility, and his ultimate determination that Plaintiff was not disabled.

## IV. ORDER

**NOW THEREFORE, IT IS ORDERED:**

1. Plaintiff's "Motion For Judgment on the Pleadings" (document #12) is **DENIED**; Defendant's "Motion for Summary Judgment" (document #14) is **GRANTED**; and the Commissioner's decision is **AFFIRMED.**

2. The Clerk is directed to send copies of this Memorandum and Order to counsel for the parties.

**SO ORDERED.**

Signed: August 25, 2016

David S. Cayer
United States Magistrate Judge